ELLIS, Judge:
This is an expropriation suit in which the State of Louisiana, through the Department of Highways, has taken certain property from defendants Cecil R. Tyler, William R. Copeland and Joseph L. Mallet for the widening of Range Road in Den-ham Springs, Louisiana. Range Road, which prior to the taking was a two lane blacktop road, connects U. S. Highway 190 with the newly constructed Interstate Highway 12. After' completion of the project, Range Road was a four lane divided concrete highway. The date of the taking was July 24, 1969.
Prior to the taking, defendants were the owners of a rectangular parcel of unimproved property containing 37.1 acres, fronting about 1100 feet on the East side of Range Road, with a depth of about 1300 feet running East. The tract was zoned residential except for the portion fronting *496 on Range Road to a depth of 200 feet, which was zoned commercial.
The part taken consists of a number of parcels. There is a strip approximately 15 feet in depth along the entire frontage on Range Road, and containing 0.429 acres, of which the full ownership is being acquired. Three small parcels, totalling 0.019 acres and located at various points just behind and adjoining the first parcel, are being taken for drainage servitudes. An additional drainage servitude is taken over a 40 foot strip running East from the parcel taken on Range Road and located about 200 feet South of the North boundary of the original tract, having an area of 1.321 acres. Finally, temporary construction ser-vitudes were taken on five small parcels of land adjacent to the first strip taken, to-talling 0.1075 acres.
The State deposited the sum of $2,870.00 for just compensation for the part taken, which included no severance damages. Defendants’ original answer demanded compensation and damages totalling $34,-000.00. A supplemental answer, missing from the record, but which we are satisfied was filed, and of which we have been furnished a copy, increased that demand to $71,000.00.
After trial on the merits, judgment was rendered fixing the value of the part taken at $12,457.37 and severance damages at $35,684.31, for a total compensation of $48,141.68. From that judgment, the State has appealed.
As is usual in these cases, the opinions of the expert witnesses called by the opposing parties are so divergent as to be irreconcilable.
Two experts testified for the State. The first of these was Daniel G. Carlock. He testified that the highest and best use of the property was for future subdivision for residential purposes. He found the property to have a value of $2,800.00 per acre as of the time of the taking, and awarded that amount for the strip taken in full ownership as well as the parcels taken for the drainage servitudes, or a total of $4,953.00 for the 1.769 acres taken. He awarded $73.00 for the temporary construction servitudes, which had reverted to the defendants following completion of the project. His total award was $5,026.00. It was his opinion that there were no severance damages because the value of the property was enhanced by the improvement to Range Road.
The main comparable sale used by Mr. Carlock in reaching his conclusion was the sale by which the defendants herein acquired the subject property, on April 16, 1969, just three months before the taking. That sale reflected a value of $2,600.00 per acre. He also used a sale of 49 acres of land located one mile South of the subject property, on Range Road, at its interchange with Interstate Highway 12. The sale was frqm Ronaldson to P. W. C. Corporation, dated June 6, 1967, for a consideration of $3,000.00 per acre. He was of the opinion that the latter parcel was more valuable than the subject property because of its proximity to the interchange.
He used two other sales of small tracts, both from J. C. Summers to J. Eugene Turk, fronting on Range Road almost immediately to the South of the subject property. The first of these was for 1.83 acres, dated February 25, 1965, for a consideration of $3,005.00 per acre. The second, of 1.77 acres, was on April 21, 1966, and for a consideration of $3,107.00 per acre.
Mr. Carlock also testified that the 40 foot drainage servitude actually followed a natural drain which existed prior to the taking.
The second appraiser for the State was John E. Allphin. He used the same approach and the same comparable sales as did Mr. Carlock. He concluded that the parcels taken for the highway and for the drainage had a value of $3,200.00 per acre, or a total of $5,660.00 for the 1.769 acres taken permanently. He gave $81.00 for *497 the construction servitudes, for a total award of $5,741.00. He agreed with Mr. Carlock that there were no severance damages. '
The first appraiser to testify for the defendants was James E. Carpenter. He used the market data approach and considered four comparable sales. The first of these was from Eddie Turner to William R. Powers, dated July 19, 1968, of an unimproved 1.4 acre tract located on Range Road about of a mile South of the subject property, nearing the 1-12 interchange, and having a highest and best use as commercial property. This sale was for a consideration of $8,571.00 per acre.
The second sale was from Eddie Turner to Roy Powers, adjacent to the above sale, containing 1.4 acres, and sold on the same date for the same price. The third sale was from Eddie Turner to O. P. Waldrep, Jr., et al, adjoining the second sale on the North. It was for 1.66 acres, dated November 27, 1967, for a consideration of $9,626.00 per acre. The fourth sale was from P. W. C. Corporation to L. A. Lard, dated July 9, 1969, and containing 1.074 acres. It is located about 200 feet South of the first comparable and was for a consideration of $13,966.00 per acre.
After making his adjustments for time, size and location, Mr. Carpenter arrived at a value of $7,059.00 per acre for the subject property, and estimated a total of $12,487.37 for the value of the 1.769 acres permanently taken. He assigned no value to the construction servitudes, considering this to be negligible.
Mr. Carpenter found a total of $35,684.-31 in severance damages. He arrived at this conclusion on the basis of a sale of 6.-11 acres of the subject tract, situated on the North side of the property about 500 feet East of Range Road, and straddling the drainage servitude. This sale was made on February 8, 1971, for a consideration of $5,990.00 per acre. Because an option had been granted to purchase another parcel on the subject property for $7,000.00 per acre, he was of the opinion that the entire 35.331 acre remainder had been damaged to the extent of $1,010.00 per acre.
The defendants’ second appraiser was Earl R. Graham. He used the market data approach, and four of his five comparable sales were the same used by Mr. Carpenter. He gave $77.40 as the value of the construction servitudes. His total estimate of just compensation was $57,731.00.
The trial court adopted Mr. Carpenter’s appraisal as the “most realistic and acceptable.” In this court, the main contention relates to the failure of defendants’ appraisers to use as a comparable the sale by which defendants acquired the property only three months before the taking.
Mr. Carpenter testified that he considered that sale to be a “distress sale” because of the vendor being a corporation in liquidation and because two of the defendants told him that they bought the tract as soon as they heard it was on the market at the price they paid. He was also of the opinion that the sale was between an uninformed seller and an informed buyer. However, Mr. Carpenter made no inquiry relative to the reasons for the liquidation of the corporation, and was unaware how long the property had been on the market before the sale to defendants.
Both Mr. Carlock and Mr. Allphin testified that the property had been on the market for four or five months prior to defendants’ acquisition. Their appraisals were originally made prior to the date of that sale and they had inquired as to the selling price in connection therewith.
After reviewing the record, we have concluded that, in failing to consider the defendants’ acquisition of the property as the most important comparable in the record, the trial judge committed manifest error. We do not find either Mr. Carpenter’s speculations relative to a distress sale or defendants’ eagerness to acquire the property to be persuasive.
*498 In addition, we think the other comparable sales used by Mr. Carlock and Mr. All-phin indicate that the price paid by defendants for the property in April, 1969, was not out of line with prices then being, paid for similar properties.
We will therefore adopt Mr. All-phin’s estimate of $3,200.00 per acre as the fair value of the subject property at the time of the taking, as well as his valuation of the construction servitudes. Further, in view of the sale of the .6.11 acre tract straddling the draining servitude for $5,-990.00 per acre in February, 1971, we are of the opinion that no severance damages were suffered by the subject property.
The judgment appealed from is therefore amended so as to decrease the award to $5,741.00 subject to a credit for the $2,870.-00 heretofore deposited by the State, and, as amended, it is affirmed. All costs of this appeal are to be paid by defendants, and the State shall pay all other costs for which it may be liable under the law.
Amended and affirmed.